UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TENNESSEE, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: |
| v. | ) ) | |
| VANGUARD HEALTHCARE, LLC, VANGUARD HEALTHCARE SERVICES, LLC, BOULEVARD TERRACE, LLC, VANGUARD OF CRESTVIEW, LLC, GLEN OAKS, LLC, IMPERIAL GARDENS HEALTH AND REHABILITATION, LLC, VANGUARD OF MEMPHIS, LLC, VANGUARD OF MANCHESTER, LLC, and MARK MILLER, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**UNITED STATES' AND TENNESSEE'S JOINT MOTION FOR AN ORDER THAT THEIR PENDING FALSE CLAIMS ACT CIVIL ACTION IS LEGALLY EXCEPTED FROM THE AUTOMATIC STAY IN BANKRUPTCY**

## I.     INTRODUCTION

When a person or business files bankruptcy, federal law automatically stops almost everyone with claims against the person or business from pursuing those claims outside bankruptcy. But governments are not stopped by bankruptcy from exercising their normal police and regulatory powers.

Therefore, as part of exercising their normal police and regulatory powers, the United States of America (United States) and the State of Tennessee (Tennessee) respectfully move this Court for an order that they may pursue the civil enforcement action, *United States v. Vanguard Healthcare, LLC*, Case No. ____, (M.D. Tenn. Sept. 6, 2016), on file in the United States District Court brought pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, the Tennessee

Medicaid False Claims Act (TMFCA), Tenn. Code Ann. § 71-5-181-185, and the common law, against defendants Vanguard Healthcare, LLC, Vanguard Healthcare Services, LLC, Boulevard Terrace, LLC, Vanguard of Crestview, LLC, Glen Oaks, LLC, Vanguard of Memphis, LLC, Vanguard of Manchester, LLC (collectively, the Reorganizing Defendants) on the grounds that the civil enforcement action is excepted from the automatic stay in bankruptcy pursuant to 11 U.S.C. § 362(b)(4) as an exercise of the United States and Tennessee's police or regulatory powers.

In support thereof, the United States and Tennessee assert the following:

## II.  BACKGROUND FACTUAL HISTORY

As more specifically alleged in the Complaint [Docket Entry 1] filed contemporaneously and incorporated herein, during the time period between 2010 through 2015, the Defendants submitted or caused to be submitted two types of false claims.  First, five operating nursing homes of the Defendants — Boulevard Terrace Rehabilitation and Nursing Center (Boulevard), Crestview Health and Rehabilitation (Crestview), Imperial Garden Health and Rehabilitation (Imperial), Glen Oaks Health and Rehabilitation (Glen Oaks), and Poplar Point Health and Rehabilitation (Poplar Point) — knowingly billed Medicare and TennCare for grossly substandard services that resulted in failures of care and severe physical and emotional harm to residents at these nursing homes.  Second, the United States and Tennessee allege that five Vanguard-owned nursing homes — Boulevard, Glen Oaks, Imperial, Poplar Point, and Manchester Health Care Center (Manchester) — submitted or caused to be submitted to TennCare Pre-Admission Evaluations (PAEs) and/or Pre-Admission Screening and Resident Reviews (PASRRs) with forged, photocopied signatures.

After a thorough investigation by the Tennessee Bureau of Investigation (TBI) and the United States Department of Health and Human Services (HHS) and several informal discussions

with counsel for most of the Defendants, the United States and Tennessee scheduled a formal meeting with Vanguard's defense counsel to present their findings.

Prior to the scheduled meeting, the Reorganizing Defendants and other affiliated entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which were administratively consolidated under *Vanguard Healthcare, LLC*, Case No. 3:16-bk-03296, on May 6, 2016.

Pursuant to Bankruptcy Court Order [*In re Vanguard Healthcare, LLC*, Case No. 16-bk-03296, Docket No. 185], the deadline for the United States and Tennessee to file their proof of claims on behalf of, respectively, HHS and TennCare against each of the Reorganizing Defendants in bankruptcy is September 6, 2016.

Here, the United States and Tennessee seek an order confirming that their action filed in District Court, *United States v. Vanguard Healthcare, LLC*, against the Reorganizing Defendants is excepted from the automatic stay in bankruptcy, inasmuch as the suit seeks to liquidate the governments' False Claims Act damages against the Reorganizing Defendants. The United States and Tennessee are not seeking to collect or enforce any money judgment against the Reorganizing Defendants while they are in bankruptcy without further order from the bankruptcy court.

### III.    ARGUMENT

### A.    This Court Has Jurisdiction To Determine The Effect Of The Automatic Stay

While most litigation concerning the automatic stay in bankruptcy takes place in bankruptcy court, the District Court has full concurrent jurisdiction to determine the applicability of the automatic bankruptcy stay. *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383-84 (6th Cir. 2001); *Jahn v. United States (In re WinPar Hospitality Chattanooga, LLC)*, 401 B.R. 289, 294 (Bankr. E.D. Tenn. 2009).

3

### B.    The False Claim Act Suit Is Excepted From The Automatic Stay As An Exercise Of The Governments' Police Or Regulatory Power

The automatic stay, 11 U.S.C. § 362(a), stays the (1) commencement or continuation of any action by a creditor against the debtor or to recover a claim against a debtor that arose before the bankruptcy; (2) enforcement against the debtor or property of the estate of any judgment or any act to enforce a lien; (3) any act to obtain possession of, or exercise control over, property of the estate; and (4) any act to collect, assess, or recover a claim against a debtor. There are exceptions to the stay, however, including § 362(b)(4) that renders the stay inapplicable to the government's legitimate exercise of "police or regulatory power."

Through section 362(b)(4) of the Bankruptcy Code excepting the government's exercise of its police or regulatory powers from the automatic stay, "Congress declared that the policy set forth in the Bankruptcy Code's automatic stay provision yields to state and federal governmental interests in securing compliance with certain aspects of those authorities' respective regulatory and police powers." *Chao*, 270 F.3d at 385; *see also* S. Rep No. 95-989 at 52, reprinted in 1978 U.S. Code Cong. Admin. News at 5787, 5838 (Attachment #1) ("Where a government unit is suing a debtor to prevent or stop violation of fraud . . . or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.") "[T]he purpose of this exception is to prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." *Securities and Exchange Comm'n v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation and citations omitted). It is well-accepted that bankruptcy is not a haven for wrongdoers but rather a forum for "the honest but unfortunate debtor." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934); *see also Hickman v. Texas (In re Hickman)*, 260 F.3d 400, 404 (5th Cir. 2001) (construction of Bankruptcy Code should not permit "the bankruptcy courts to become a haven for wrongdoers"); *In re Graven*, 936 F.2d 378,

4

385 (8th Cir. 1991) ("The Supreme Court's statements make clear that the purpose of the bankruptcy code is to protect the honest debtor, not to provide a shield for those who exploit the code's protection then seek to escape judicial authority when their fraudulent schemes are exposed.")

As well-explained by the bankruptcy law treatise, *Norton Bankruptcy Law and Practice*, the section 362(b)(4) exception "applies to instances where the governmental unit sues a debtor to enforce consumer protection laws, antifraud acts, safety regulations, or similar police or regulatory laws. Furthermore, governmental actions which seek to fix damages for violation of such police or regulatory laws are not stayed." Hon. William L. Norton Jr. & William L. Norton III, 2 *Norton Bankruptcy Law and Practice* § 43.19 Governmental, police or regulatory power (3rd ed. July 2016 update) (Attachment #2); *see also generally* 3 Collier on Bankruptcy ¶ 362.05[5] (16th ed. 2016) (Attachment #3).

In determining whether the government is exercising its police or regulatory powers, courts in the Sixth Circuit apply two tests, the pecuniary purpose and the public policy test. *Chao,* 270 F.3d at 386.

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

*Id*. (quoting *In re Commerce Oil Co*., 847 F.2d at 295); [1] *see also United States ex. rel. Lazar v.*

---

1 An older bankruptcy court decision, *In re Wellham*, 53 B.R. 195, 197 (Bankr. M.D. Tenn. 1985), held that the United States did not satisfy the pecuniary purpose or public policy test in a lawsuit involving a False Claims Act claim. The bankruptcy court reached this decision by finding that the government was primarily seeking monetary damages. This, however, is a well-recognized component of deterring fraud. *See, e.g., SEC v. Brennan*, 230 F.3d 65, 72 (2d Cir. 2000). The government lawsuit at issue in *Wellham* is distinguishable from the case-at-hand because in *Wellham*, only 1 of 17 claims involved the False Claims

*Worldwide Fin. Servs., Inc.,* 2007 WL 4180718, at \*1 (E.D. Mich. 2007) (unreported) (Attachment #4) (allowing litigation to proceed against defendant for FCA claims in district court after bankruptcy court determined that the lawsuit "is excepted by 11 U.S.C. § 362(b)(4) from the automatic stay as an exercise of the United States' police and regulatory authority and may proceed to judgment.")

The pecuniary interest test has been refined to focus on whether the government's enforcement action would give the government an unfair pecuniary advantage over other creditors of the bankruptcy estate. *Chao*, 270 F.3d at 389 n. 9; *see also Commodity Futures Trading Com. v. Co. Petro Marketing Group, Inc*., 700 F.2d 1279, 1283 (9th Cir. 1983) (explaining that allowing "enforcement of a monetary judgment would give the governmental unit an unfair advantage over other creditors, and would effectively subvert the scheme of priorities [under the current Bankruptcy Code].") Here in this suit, the United States and Tennessee are not attempting to enforce a judgment and success of the suit would not "result in a pecuniary advantage to the government vis-à-vis other creditors of the debtor[s'] estate[s.]" *Chao,* 270 F.3d at 386. In the Reorganizing Defendants' bankruptcies, the United States and Tennessee are general unsecured creditors and after they prevail in their action, the United States will remain a general unsecured creditor with no different rights under the Bankruptcy Code than presently. The Complaint merely seeks to liquidate the United States and Tennessee's claims

---

Act and the claims were based on contract law. Here, there are five claims; three of which are directly brought pursuant to the FCA or TMFCA and the other two are derivative of the FCA and TFMCA claims. In *Wellham*, there was also no risk of continued fraudulent acts because the debtor was no longer a government supplier; whereas, here, all Reorganizing Defendants except Crestview intend to remain Medicare, Medicaid and TennCare providers. In any case, *Wellham* is not binding on this Court and, if relevant, the United States urges that *Wellham* be overruled as incorrectly decided. *See In re Commonwealth Cos***.,** 913 F.2d 518, 524 n.6 (8th Cir. 1990) (rejecting *Wellham's* approach based on *Wellham's* subjective focus into the government's reason for filing its lawsuit instead of on the purpose behind the underlying law that the government sought to enforce).

against the Reorganizing Defendants to a sum certain, which will be necessary for the Reorganizing Defendants to pay the United States and Tennessee's bankruptcy claims pursuant to a Chapter 11 bankruptcy plan.[2] That benefits everyone in this case.

The public policy test evaluates whether the government is bringing a lawsuit to effectuate public policy or to adjudicate private rights. *Chao*, 270 F.3d at 389-90. The public purpose of the FCA is to deter fraud against the government and by extension, against the taxpaying public. *See, e.g., United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 641 (6th Cir. 2002); *United States ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 289 (E.D.N.Y. 2006). As explained by the Eighth Circuit Court of Appeals:

> Civil actions by the government to enforce the FCA serve to inflict the "sting of punishment" on wrongdoers and, more importantly, deter fraud against the government, which Congress has recognized as a severe, pervasive, and expanding national problem. The police and regulatory interests furthered by enforcement of the FCA are undeniably legitimate and substantial. The fact that the statute's chief purpose is to make the government whole does not reduce the weight of these interests so as to make their vindication insufficient to qualify for the § 362(b)(4) exception from the automatic stay.

*In re Commonwealth Cos.*, 913 F.2d 518 (8th Cir. 1990); *see also United States ex rel. A+ Homecare, Inc. v. Medshares Mgt. Group, Inc.*, 400 F.3d 428, 456 (6th Cir. 2005) (the FCA's damages provision ensures not just compensation, "but also the fundamental integrity of all those who seek to do business with the Government"); *SEC v. Brennan*, 230 F.3d 65, 72 (2d Cir. 2000) ("When the government seeks to impose financial liability on a party, it is plainly

---

2 The United States expects to seek mandatory withdrawal of reference pursuant to 28 U.S.C. § 157(d) if there is any objection to its proof of claims in bankruptcy because the False Claims Act is a federal law involving interstate commerce as applied to the Medicare and Medicaid programs involved here. *See, e.g., United States v. Hickman*, 331 F.3d 439, 444 (5th Cir. 2003) ("[I]t cannot be seriously contended that [Medicare and Medicaid] and their functions do not affect commerce"); *McElhinney v. Medical Protective Device*, 549 F. Supp. 121, 128 (ED Ky. 1982) (finding interstate commerce affected where hospital had over $2 million in annual Medicare receipts, treated patients travelling in interstate commerce, and a majority of the hospital supplies and equipment was bought from out-of-state vendors).

acting in its police or regulatory capacity - it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive . . . up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or regulatory capacity - in the public interest, it is burdening certain conduct so as to deter it.")

For example, in a leading case, *Chao*, 270 F.3d at 391, the Sixth Circuit held that the United States' motion for an injunction to prevent the Chapter 7 Trustee's sale of stolen goods was not in furtherance of the Department of Labor's statutory powers to regulate and enforce labor standards but was designed to promote the private rights of unpaid employees because, there, all damages recovered would be given to the individual employees. In contrast here, the United States' and Tennessee' FCA suit effectuates public policy by encouraging quality healthcare, deterring fraudulent billing for grossly substandard patient care and deterring the use of fake or photocopied signatures in submitting PAEs and PASSRs. Furthermore, in this case, there are not any private rights to adjudicate.

Consistent with the Sixth Circuit's analysis above, courts outside of the Sixth Circuit have also routinely concluded that cases brought by the United States under the FCA are excepted from application of the automatic stay in bankruptcy. *See, e.g., Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1298 (9th Cir. 1997) ("[A] civil suit brought pursuant to the Federal False Claims Act is sufficient to satisfy the section 362(b)(4) exception."); *In re Commonwealth Cos.*, 913 F.2d 518, 527 (8th Cir. 1990) (holding that the government's proposed FCA action against the debtors is excepted from the automatic stay under § 362(b)(4) up through the entry of a money judgment; *United States ex. rel. Goldstein v. P & M Draperies, Inc.*, 303 B.R. 601, 603 (D. Md. 2004) ("[I]t is well settled that

an action under the False Claims Act qualifies as an action to enforce the government's 'police or regulatory power.'"); *United States ex rel. Doe v. X, Inc.*, 246 B.R. 817, 818 (E.D. Va. 2000) ("[T]here is ample authority holding that laws, such as the False Claims Act, that are designed to prevent or stop fraud, or to fix damages for fraud already committed, are police or regulatory laws."); *In re. Selma Apparel Corp.*, 132 B.R. 968, 970 (S.D. Ala. 1991) (government suit under FCA alleging conspiracy by debtor to defraud the government and seeking compensation for losses and imposition of a penalty on debtor was a police and regulatory action, so as to be excepted from automatic stay, even if government's primary purpose was compensation for pecuniary loss.)

Respectfully, the Complaint filed contemporaneously with this Motion under the FCA and TMFCA is within the police and regulatory exception to the automatic stay, 11 U.S.C. § 364(b)(4).

## IV.     CONCLUSION

WHEREFORE, the United States and Tennessee respectfully move this Court, for an order that they may pursue the Complaint filed contemporaneously in this case against the Reorganized Defendants because the suit is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4) as an exercise of police power or regulatory function by the United States and Tennessee.

//

//

//

//

//

{Signature on the next page}

9

Respectfully submitted,

For the United States:

DAVID RIVERA
United States Attorney
Middle District of Tennessee


/s/ Megan Seliber
MEGAN SELIBER
ELLEN BOWDEN MCINTYRE, BPR #023133
Assistant United States Attorney
110 9th Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
Telephone: (615) 736-5151
Facsimile: (615) 401-6626
megan.seliber@usdoj.gov
ellen.bowen@usdoj.gov


For the State of Tennessee:


/s/ Phillip H. Bangle
HERBERT H. SLATERY III
Attorney General & Reporter
PHILIP H. BANGLE, BPR #031636
MARTHA DAVIS, BPR #014813
Assistant Attorney Generals
425 Fifth Avenue North
Nashville, TN 37243
Telephone: (615) 741-6421
Facsimile: (615) 532-4892
philip.bangle@ag.tn.gov
martha.davis@ag.tn.gov