**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and** | ) | |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:16-02380** |
| | ) | **Judge Sharp** |
| **VANGUARD HEALTHCARE, LLC,** | ) | |
| **VANGUARD HEALTHCARE** | ) | |
| **SERVICES, LLC, BOULEVARD** | ) | |
| **TERRACE, LLC, VANGUARD OF** | ) | |
| **CRESTVIEW, LLC, GLEN OAKS,** | ) | |
| **LLC, IMPERIAL GARDENS HEALTH** | ) | |
| **AND REHABILITATION, LLC,** | ) | |
| **VANGUARD OF MEMPHIS, LLC,** | ) | |
| **VANGUARD OF MANCHESTER, LLC,** | ) | |
| **and MARK MILLER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Contemporaneously with the filing of a 268-paragraph, 59-page Complaint, Plaintiffs, the United States of America and the State of Tennessee, filed a "Joint Motion for an Order That Their Pending False Claims Act Civil Action is Legally Excepted From the Automatic Stay in Bankruptcy" (Docket No. 2). Defendants oppose that Motion (Docket No. 18). Also pending is Defendants' "Motion to Stay Response to Plaintiffs' Complaint" (Docket No. 10), which Plaintiffs do not oppose (Docket No. 18). Both Motions will be granted.

## I. Background

As the title of Plaintiffss Motion suggests, this is primarily a False Claims Act case brought pursuant to 31 U.S.C. §§ 3729-3733. In its simplest form, Plaintiffs allege that five nursing homes operated by Defendants knowingly billed Medicare and TennCare for grossly substandard services

that resulted in improper care and severe physical and emotional harm to the nursing home residents. Plaintiffs also allege that four of those nursing homes and another one submitted pre-admission evaluations to TennCare that contained forged and/or photocopied signatures.

The allegations were investigated by the Tennessee Bureau of Investigation and the United States Department of Health and Human Services. Plaintiffs claim that, after conversations with counsel for most of the Defendants, a formal meeting was scheduled in which Plaintiffs intended to present their findings. However, that meeting did not take place because the corporate Defendants filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

## II. <u>Discussion</u>

"As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition." <u>Dominic's Rest. of Dayton, Inc. v. Mantia</u>, 683 F.3d 757, 760 (6th Cir. 2012). It also operates to stay "the commencement . . . of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . or to recover a claim against the debtor that arose before the commencement of the bankruptcy case." 11 U.S.C. § 361(a)(1).

"The purpose of the automatic stay is to 'give[ ] the debtor a breathing spell from his creditors.'" <u>In re Robinson</u>, 764 F.3d 554, 559 (6th Cir. 2014) (citation omitted). Thus,

> [i]t stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

<u>Id</u>. "In effect, the stay offers debtors a 'new opportunity' to organize their financial affairs, 'unhampered by the pressure and discouragement of pre-existing debt.'" <u>Id</u>. (quoting <u>Local Loan</u>

Co. v. Hunt, 292 U.S. 234, 244 (1934)).

"But the automatic stay protection does not apply in all cases; there are statutory exemptions, and there are non-statutory exceptions." Dominic's Rest., 683 F.3d at 760. Thus, while the automatic stay "'repel[s] . . . many prepetition collection actions, [s]ome governmental attacks on the estate . . . penetrate the barrier.'" In re Robinson, 764 F.3d at 559 (quoting In re Javens, 107 F.3d 359, 363 (6th Cir. 1997)).

One such exception for a governmental attack, and the one on which Plaintiffs rely, deals with the enforcement of police or regulatory powers. More specifically, the Bankruptcy Code provides that the filing of a petition does not operate as a stay of

> the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

11 U.S.C. § 362(b)(4).

The inclusion of the language relating to chemical weapons and their destruction seems a bit odd because the statute can arguably be read as applying only to governmental units exercising their authority under the convention. In fact, at least one court appears to have read the language that way. See, In re Finley, 237 B.R. 890, 894 (Bankr. N.D. Miss. 1999) (stating that 11 U.S.C. § 362(b)(4), as amended, "is applicable to governmental units or any organizations exercising authority under the Convention[,] . . . which would not include the Mississippi Department of Public Safety under the factual circumstances of this proceeding").

However, it has been cogently explained – based upon the statute's legislative history – that

when Congress amended § 362(b) in 1998, it combined former subsections (b)(4) and (b)(5) into a single new subsection – § 362(b)(4) – and intended to expand the scope of the statute, not curtail it. United States v. Federal Resources Corp., 525 B.R. 759, 763-64 (D. Idaho 2015).  In fact, "[w]ithout referring to the legislative history surrounding the 1998 amendment, circuit court of appeals have continued to analyze the § 362(b)(4) police or regulatory powers exception in exactly the same manner as before."  Id. at 764-65 (collecting cases); see also United States ex rel. Fullington v. Parkway Hosp., 351 B.R. 280, 290 (E.D.N.Y. 2006) ("Apart from actions brought by a 'governmental unit,' § 362(b)(4) also applies to actions brought by an action or proceedings commenced by an organization exercising authority under the Convention[.]"); In re PMI-DVW Real Estate Holdings, L.L.P., 240 B.R. 24, 30 (Bankr. D. Ariz. 1999) ("[T]he Court finds and concludes that Congress did not amend the statute in such a way to only include enforcement of violations of the Convention . . . as the only police or regulatory power exception to the automatic stay[.]"); In re Mohawk Greenfield Motel Corp., 239 B.R. 1, 6 (Bankr. D. Mass. 1999) (observing that "commentators agree that given the lack of significant departure from the former Code sections, the case law that developed under former § 362(b)(4) and (5) remains as viable guidance in interpreting this new provision").

For its part, the Sixth Circuit appears to have addressed Section 362(b)(4) on three occasions since the amendment, see In re Leonard, 644 F. App'x 612 (6th Cir. 2016), Chao v. Hosp. Staffing Servs., Inc., 270 F.3d 374 (6th Cir. 2001), and Associated Gen. Contractors of Ohio, Inc. v. Drabik, 250 F.3d 482 (6th Cir. 2001), but in none of those cases suggested that the exception was limited to claims brought under the Convention.   Quite the contrary, the court in each of those cases referred to Section 362(b)(4) as the "police and regulatory power" exception to the automatic stay provision.

See Leonard, 644 F. App'x at 615; Chao, 270 F.3d at 385; Drabik, 250 F.3d at 285 n.5. Thus, the Court considers the police or regulatory power exception to the automatic stay provision, without limiting it to actions under the convention.

"[T]o determine whether an action qualifies as a proceeding pursuant to a governmental unit's police or regulatory power, and therefore falls outside the ambit of the automatic stay," a court is to "appl[y] two tests: the pecuniary purpose test and the public policy test." Chao, 270 F.3d at 385. As the Sixth Circuit in Chao explained:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

Id. at 385-86.

Although the Sixth Circuit appears to have yet addressed the issue, "[i]t is well settled that actions brought under the False Claims Act fall squarely within the § 362(b)(4) exception to the stay," In re McOuat, 2016 WL 5947229, at *2 (Bankr. E.D.N.C. Oct. 13, 2016), at least insofar as the action is brought by the government and not by a private citizen as a *qui tam* action in which the government has chosen not to intervene, United States *ex rel.* Kolbeck v. Point Blank Solutions, Inc., 44 B.R. 336, 341-42 (E.D. Va. 2011). The Eighth Circuit has explained:

> [C]ivil actions by the government to enforce the FCA serve to inflict the "sting of punishment" on wrongdoers and, more importantly, deter fraud against the government, which Congress has recognized as a severe, pervasive, and expanding national problem. The police and regulatory interests furthered by enforcement of the FCA are undeniably legitimate and substantial. The fact that the statute's chief purpose is to make the government whole does not reduce the weight of these interests so as to make their vindication insufficient to qualify for the § 362(b)(4) exception from the automatic stay.

In re Commonwealth Companies, Inc., 913 F.2d 518, 526 (8th Cir. 1990); see also, In re Universal Life Church, Inc., 128 F.3d 1294, 1298 (9th Cir. 1997) (citing In re Commonwealth Companies for the proposition that "a civil suit brought pursuant to the Federal False Claims Act is sufficient to satisfy the section 362(b)(4) exception").

Given the clear majority view, the Court finds that Plaintiffs' Complaint falls within the Section 362(b)(4) exception to the automatic stay. The Court also finds that the Complaint meets the tests set forth in Chao.

The inquiry under the "pecuniary interest" test is "whether the enforcement would result in a pecuniary *advantage* to the government *vis-a-vis* other creditors of the bankruptcy case." Chao, 270 F.3d at 388 n.9. That does not appear to be the case here because, not only are Plaintiffs not attempting to enforce a judgment, they are general unsecured creditors who, if they prevail, will remain in that capacity. The Complaint merely seeks to liquidate their claims. As such, success of the suit would not result in a pecuniary advantage to the government to the detriment of other creditors. In re Commonwealth Companies, 913 F.2d at 524 ("The entry of judgment [on the government's False Claims Act complaint] would simply fix the amount of the government's unsecured claim against the debtors. It would not convert the government into a secured creditor, force the payment of a prepetition debt, or otherwise give the government a pecuniary advantage over other creditors of the debtors' estate.").

As for the "public policy" test, because "[a]ll acts of Congress by definition declare national policy, and lawsuits to enforce those acts necessarily effectuate the public policy of the United

States," courts must "analyze whether a *particular* lawsuit is undertaken by a governmental entity in order to effectuate public policy or, instead, to adjudicate private rights." Id. at 389. By this suit, Plaintiffs seek to deter fraudulent billing and the submission of fraudulent documents for payment, which falls within "'[t]he purpose of the FCA – policing the integrity of the government's dealings with those to whom it pays money.'" United States *ex rel.* Am. Sys. Consulting, Inc. v. ManTech Advanced Sys. Int'l, 600 F. App'x 969, 977 (6th Cir. 2015) (citation omitted). Furthermore, through this action, Plaintiffs do not seek to adjudicate any private rights.

In determining that the exception to the automatic stay applies, the Court has considered Defendants arguments to the contrary, but find them unpersuasive.

First, Defendants argue that, "[b]y filing the Stay Relief Motion in this Court, Plaintiffs have violated the Standing Order of Reference, and contravened the statutory framework imposed by 28 U.S.C. § 157." (Docket No. 9 at 8). Relatedly, Defendants argue that Plaintiffs have not complied with either the federal or local bankruptcy procedural requirements for stay motions.

Even though there is a standing order of reference in this district in accordance with 28 U.S.C. 157(a), this court is vested with original and exclusive jurisdiction over all bankruptcy cases and original and concurrent jurisdiction over all civil proceedings arising under the Bankruptcy Code. 28 U.S.C. § 1334(a), (b). With regard to such jurisdiction in the context of the automatic stay provision and exceptions thereto, the Sixth Circuit in Chao observed:

> Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of other courts is partially stripped. . . . In addition to exclusive jurisdiction over the bankruptcy proceeding itself, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." . . . However, the exclusivity of the bankruptcy court's jurisdiction reaches only as far as the automatic stay provisions of 11 U.S.C. § 362. That is, if the automatic stay applies to an action directed at the debtor or its

property, jurisdiction is exclusive in the bankruptcy court. If the automatic stay does not apply *e.g.*, if an exception to the stay covers the action in question the bankruptcy court's jurisdiction is concurrent with that of any other court of competent jurisdiction.

270 F.3d at 383-84.

As to which court can make the determination, "the court in which the judicial proceeding is pending . . . has jurisdiction to decide whether the proceeding is subject to the stay." Dominic's Rest. of Dayton, Inc. v. Mantia, 683 F.3d 757, 760 (6th Cir. 2012). Even more specifically, "'[t]he court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.'" N.L.R.B. v. Edward Cooper Painting, Inc., 804 F.2d 934, 939 (6th Cir. 1986) (quoting In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2nd Cir.1985)); see In re WinPar Hosp. Chattanooga, LLC, 401 B.R. 289, 294 (Bankr. E.D. Tenn. 2009) (stating that "if the automatic stay applies to an action directed at the debtor or its property, jurisdiction is exclusive in the bankruptcy court," but "[i]f the automatic stay does not apply 'e.g., if an exception to the stay covers the action in question' the bankruptcy court's jurisdiction is concurrent with that of any other court of competent jurisdiction"); Singleton v. Fifth Third Bank of Western Ohio, 230 B.R. 533, 538-39 (6th Cir. B.A.P. 1999) ("That the bankruptcy court may be the exclusive forum to consider a motion for relief from the automatic stay does not preclude a nonbankruptcy court from determining whether a matter pending before it is stayed by a party's bankruptcy filing.").

Because this Court has jurisdiction to determine whether the present action is exempt from the stay, Defendants' complaint about Plaintiffs' failure to follow the Bankruptcy Rules and the Middle District Bankruptcy Court's Local Rules fails. Besides, the linchpin of Defendants' arguments on this score is Bankruptcy Rule 4001(a), which deals with relief from the automatic stay

and requires that a motion be made in accordance with Rule 9014. However, the request for relief

from a stay and an exception to the automatic stay are two different things. As one court observed

in relation to a motion filed by a state bar regarding disciplinary proceedings against a debtor-

attorney:

> The Bar's request for relief from the stay was a contested matter that was properly
> commenced by a motion. Bankruptcy Rules 4001(a) and 9014. The fact that the Bar
> alternatively contended that the stay did not apply did not change this into an
> adversary proceeding. Bankruptcy courts regularly hear motions for relief from the
> stay where a party contends in the alternative that the stay does not apply, but that
> if it does it should be lifted. The policies favoring expedited relief apply equally to
> such alternative motions as to motions which request only that the stay be lifted.
> Framing the request for relief in such a manner, therefore, should not convert the
> dispute into one that should be determined in an adversary proceeding.

In re Wade, 115 B.R. 222, 230 (B.A.P. 9th Cir. 1990).

Second, Defendants rely on In re Wellham, 53 B.R. 195 (Bankr. M.D. Tenn. 1985), which

they characterize as "being a case directly on point in the Middle District of Tennessee." (Docket

No. 9 at 8). There, the Bankruptcy Court found that the action did not fall within the 362(b)(4)

exception, but it did so in considering an entirely different complaint.

In In re Wellham "only one count of the seventeen-count complaint deal[t] with the false

claims act while the remaining counts s[ought] damages under a variety of common law ground."

Id. at 198. As a consequence, the bankruptcy court found that the action could not "properly be

characterized as an enforcement of police or regulatory powers" under either the pecuniary purpose

or public policy test, and stated that it was "not convinced that" enforcing the False Claims Act was

"the Government's primary motivation." Id. Here, in contrast, while the last two counts of the five-

count complaint allege payment by mistake and unjust enrichment, the first two counts allege

violation of the False Claims Act and the third alleges violations of the Tennessee Medicaid False

Claims Act, Tenn. Code Ann. § 71-5-182(a)(1)(B).  See In re McQuat, 2016 WL 5947229, at *3 (Bankr. E.D.N.C. Oct. 13, 2016) (stating that "[t]his court is satisfied that the facts of this case fit well-settled case law: the United States' first three claims, all under the False Claims Act, fall within the § 362(b)(4) exception to the automatic stay," notwithstanding the fact that the government also filed "common law fraud claims, including unjust enrichment and payment by mistake of fact").

Further, in In re Wellham, the debtor was barred from continuing as a supplier to the government and was not doing so at the time the government's motion was filed.  Here, most of the reorganizing Defendants are still in business and, according to Plaintiffs, all "except Crestview intend to remain Medicare, Medicaid and TennCare providers."  (Docket No. 2 at 6).

Moreover, the few cases like In re Wellham that can be read as finding that a False Claims Act case brought by the Government does not fall within the Section 362(b)(4) exception because of the damages component of such claims have subsequently been characterized as being based upon a "flawed analysis."  In re Commonwealth Companies, 913 F.2d at 527 n.12.  That may be a bit harsh, but the fact remains that part of the bite of a False Claims Act case is that the wrongdoer will be forced to pony-up money.  "Indeed, most government actions which fall under this exemption have some pecuniary component, particularly those associated with fraud detection." In re Universal Life Church, Inc., 128 F.3d 1294, 1299 (9th Cir. 1997). But, "[t]his does not abrogate their police power function" and "[o]nly if the action is pursued 'solely to advance a pecuniary interest of the governmental unit will the automatic stay bar it.'" Id. (citation omitted); see  Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 865 (4th Cir. 2001) ("The fact that one purpose of the law is to protect the state's pecuniary interest does not necessarily mean that the exception is inapplicable.);

In re Commonwealth Companies, 913 F.2d at 525 ("The FCA is certainly a fraud law. . . It seems inescapable then that a governmental action attempting to fix damages for violation of the FCA comes within § 362(b)(4)"); EEOC v. CTI Glob. Sols., Inc., 422 B.R. 49, 52-33 (D. Md. 2010) (finding that because the court was "persuaded that Plaintiff's primary purpose in bringing this Title VII action is to protect the public welfare . . . the fact that a secondary, pecuniary interest may be involved does not bring the case outside of the § 362(b)(4) exemption").

### III. Conclusion

For the foregoing reasons, Plaintiffs' "Joint Motion for an Order That Their Pending False Claims Act Civil Action is Legally Excepted From the Automatic Stay in Bankruptcy" (Docket No. 2) will be granted. Defendants' unopposed "Motion to Stay Response to Plaintiffs' Complaint" (Docket No. 10) will also be granted.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE