# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), (collectively, the "United States"), the State of Tennessee, acting through the Tennessee Attorney General and Reporter and on behalf of its Medicaid program known as TennCare ("Tennessee") (collectively with the United States, "the Governments"), Vanguard Healthcare, LLC, Vanguard Healthcare Services, LLC, Boulevard Terrace, LLC, Vanguard of Crestview, LLC, Glen Oaks, LLC, Imperial Gardens Health and Rehabilitation, LLC, Vanguard of Memphis, LLC, Vanguard of Manchester, LLC (collectively, the "Vanguard Defendants"), Vanguard Financial Services, LLC, Elderscript Services, LLC (collectively with the Vanguard Defendants, "Vanguard"), William Orand ("Orand"), and Mark Miller ("Miller") (collectively with Orand, "the Individual Defendants"), (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Vanguard Healthcare, LLC ("Vanguard Healthcare") is a closely held Tennessee limited liability company headquartered in Brentwood, Tennessee that wholly owned a chain of subsidiary skilled nursing facilities, including Boulevard Terrace, LLC ("Boulevard"),  which operates Boulevard Terrace Rehabilitation and Nursing Center in Murfreesboro, Tennessee; Vanguard of Crestview, LLC ("Crestview"), which previously operated Crestview Health and Rehabilitation in Nashville, Tennessee; Glen Oaks, LLC ("Glen Oaks"), which operates Glen Oaks Health and Rehabilitation in Shelbyville, Tennessee;  Imperial Gardens Health and Rehabilitation, LLC ("Imperial"), which previously operated Imperial Gardens Health and Rehabilitation in Madison, Tennessee; Vanguard of Memphis, LLC ("Memphis"), which

previously operated Poplar Point Health and Rehabilitation in Memphis, Tennessee; and

Vanguard of Manchester, LLC ("Manchester"), which operates Manchester Health Care Center

in Manchester, Tennessee (collectively, "Vanguard skilled nursing facilities"). Vanguard

Healthcare, LLC, also wholly owns Vanguard Healthcare Services, LLC ("Vanguard Healthcare

Services"), which provided services to the Vanguard skilled nursing facilities; Vanguard

Financial Services, LLC ("Vanguard Financial"), which provided financial services to the

Vanguard Defendants, including the Vanguard skilled nursing facilities; and Elderscript

Services, LLC ("Elderscript"), which provided pharmacy services to the Vanguard skilled

nursing facilities.

B.     William Orand is a Nashville, Tennessee resident and the majority member and

CEO of Vanguard Healthcare, Vanguard Healthcare Services, Vanguard Financial, Boulevard,

Glen Oaks, Imperial, and Manchester. Orand also previously served as the CEO and majority

member of Crestview and Memphis.

C.     Mark Miller is a Tennessee resident who served as Director of Operations for

Vanguard skilled nursing facilities from September 2011 through August 2014.

D.     On September 6, 2016, the United States and Tennessee filed an action in the

United States District Court for the Middle District of Tennessee against the Vanguard

Defendants and Miller captioned *United States v. Vanguard Healthcare, LLC, et al.*, Civ. Action

No. 3:16-cv-02380 (the "Civil Action"). On May 30, 2017, the United States and Tennessee

filed an amended complaint in the Civil Action, in which Governments added Orand as a

defendant.

E.     The United States and Tennessee contend that they have certain civil claims

against Vanguard Healthcare, Vanguard Healthcare Services, Boulevard, Crestview, Glen Oaks,

Imperial, Memphis, Vanguard Financial, Elderscript, Orand, and Miller arising from their

provision of non-existent, grossly substandard, and/or worthless nursing home services to Medicare and TennCare beneficiaries for which these Defendants and entities submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"), and the TennCare Program ("TennCare"), which is part of the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"), during the following periods:

> (1) from January 1, 2010 through December 31, 2015 for the conduct by Vanguard Healthcare Services, Crestview, Glen Oaks and Poplar;
>
> (2) from January 1, 2010 through April 30, 2013 for the conduct by Imperial;
>
> (3) from June 1, 2010 through December 31, 2015 for the conduct by Vanguard Healthcare, Vanguard Financial, and Elderscript;
>
> (4) from January 1, 2011 through December 31, 2015 for the conduct by Boulevard;
>
> (5) from June 1, 2011 through December 31, 2015 for the conduct by Orand; and
>
> (6) from October 1, 2011 through July 31, 2014 for the conduct by Miller.

That conduct, and the conduct described in Paragraph F below, is referred to below as the "Covered Conduct."

F.      The United States and Tennessee further contend that they have certain civil claims against Vanguard Healthcare, Vanguard Healthcare Services, Vanguard Financial, the Vanguard skilled nursing facilities, Orand, and Miller arising from their submission or causing the submission to TennCare of Pre-Admission Evaluations ("PAEs") and Preadmission Screening and Resident Reviews ("PASRRs") with photocopied or forged physician or nurse signatures on certifications required in the submission of claims for nursing facility services rendered to TennCare beneficiaries in Vanguard skilled nursing facilities during the following periods:

(1) from December 4, 2012 through April 30, 2014 for the conduct by Vanguard

Healthcare, Vanguard Healthcare Services, Vanguard Financial, Boulevard, Glen

Oaks, Poplar, Manchester, Orand, and Miller; and

(2) from September 20, 2012 through February 13, 2013 for the conduct by Imperial.

G. On May 6, 2016, Vanguard filed petitions for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee captioned *In re: Vanguard Healthcare, LLC, et al.*, jointly administered under Case No. 16-03296 (collectively, "the Bankruptcy Cases").

H. On September 6, 2016, the Governments timely filed proofs of claim against the Vanguard Defendants, Vanguard Financial Services, LLC, and Elderscript Services, LLC (collectively, the "Vanguard Entities"), based on the damages sought in the Civil Action. The Vanguard Entities objected to each of these proofs of claim on January 22, 2017. On July 19, 2017, the District Court entered an order withdrawing the reference with respect to the Vanguard Entities' objections, and consolidating those objections with the Civil Action (the "Withdrawal of the Reference").

I. On October 26, 2017, the Bankruptcy Court confirmed the joint reorganization plan ("Vanguard Reorganization Plan") of Vanguard Healthcare, Vanguard Healthcare Services, Boulevard, Glen Oaks, Manchester, Vanguard Financial Services, and Elderscript (the "Reorganizing Vanguard Entities"). On December 20, 2017, the Bankruptcy Court confirmed the liquidation plan for Crestview ("Crestview Liquidation Plan"). On December 21, 2017, Memphis withdrew its proposed liquidation plan and still does not have a confirmed liquidation plan.

J. This Settlement Agreement is neither an admission of liability by Vanguard, Orand, or Miller, nor a concession by the Governments that their claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, in consideration of the mutual promises and obligations of this Agreement, and in order to proceed in a manner that benefits all creditors and parties in interest as to the Vanguard bankruptcy estates, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      The Vanguard Settlement Amount (defined in this Paragraph, subsection d) shall constitute an allowed claim of the Governments within the meaning of 11 U.S.C. § 502. All debts and claims relating to or resulting from the Covered Conduct, shall be discharged to the Governments under the following terms and conditions:

a. The Reorganizing Vanguard Entities shall pay to the United States the sum of five million and one hundred thousand dollars ($5,100,000.00) ("Reorganizing Vanguard Entities Settlement Amount"), which shall constitute an allowed claim of the Governments within the meaning of 11 U.S.C. § 502 against the Reorganizing Vanguard Entities, plus interest at a 2.75% rate per annum accruing from March 28, 2018 until the Reorganizing Vanguard Entities Settlement Amount and any interest accrued thereon is fully repaid, which constitutes restitution to the United States, as follows:

(1) The Reorganizing Vanguard Entities shall pay one hundred and twenty-five thousand dollars ($125,000.00), plus interest at a 2.75% rate per annum accruing from March 28, 2018 ("Vanguard Initial Payment"), no later than three business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Tennessee.

(2) The Reorganizing Vanguard Entities shall pay all portions of the Reorganizing Vanguard Entities Settlement Amount remaining after the Vanguard Initial Payment, according to a seven-year amortization schedule, with payments following the Vanguard Initial Payment beginning on the first day of the sixth full month following the entry of a final order approving this Agreement (as defined in Paragraph 36), and then semi-annually thereafter until the fifth anniversary date of the Effective Date of the Vanguard Reorganization Plan (i.e., January 31, 2023), on which date the balance shall be paid in full. The illustrative payment schedule is attached as Exhibit A to this Agreement.

(3) The Vanguard Reorganization Plan shall not discharge the claims of the Governments against the Vanguard Reorganizing Entities, and Vanguard agrees that the Vanguard Reorganizing Entities Settlement Amount is not dischargeable pursuant to 11 U.S.C. § 1141. In addition, in the event of dismissal or conversion of any of the Vanguard Reorganizing Entities' bankruptcy cases, voluntary or otherwise, any motion or order relating to this Agreement shall survive said dismissal or conversion. To the extent that any provision of any plan of reorganization or order confirming or modifying such plan conflicts with any portion of this Agreement, the provisions of this Agreement shall control.

(4) Each Reorganizing Vanguard Entity shall be jointly and severally liable to the Governments for the Reorganizing Vanguard Entities Settlement Amount.

b. The Governments' proof of claim against Crestview (Claim No. 24 in Case No. 16-03316) shall be allowed in the amount of seven million dollars ($7,000,000.00) ("Allowed Crestview Claim"), which constitutes restitution to the United States, as follows:

   (1) The treatment of the Allowed Crestview Claim shall be paid pursuant to the Crestview Liquidation Plan.

   (2) In the event of dismissal or conversion of Crestview's bankruptcy case (Case No. 16-03316), voluntary or otherwise, the Allowed Crestview Claim and any Fed. R. Bankr. P. 9019 motion and order relating to the Allowed Crestview Claim in this Agreement shall survive that dismissal or conversion. To the extent that any provision of any plan of liquidation or order confirming or modifying such plan conflicts with any portion of this Agreement, the provisions of this Agreement shall control.

c. The Governments' proof of claim against Memphis (Claim No. 28 in Case No. 16-03318) shall be allowed in the amount of six million, five hundred thousand dollars ($6,500,000) ("Allowed Memphis Claim"), which constitutes restitution to the United States, as follows:

   (1) Neither Memphis nor any other Vanguard Entity will propose a plan of reorganization or liquidation that is inconsistent with this Agreement. In the event of dismissal or conversion of Memphis' bankruptcy case (Case No. 16-03318), voluntary or otherwise, the Allowed Memphis Claim and any Fed. R. Bankr. P. 9019 motion and order relating to the Allowed Memphis Claim in this Agreement shall survive that dismissal or conversion.

(2) Within fourteen days (14) following the Effective Date of this Agreement, Memphis will file in its Chapter 11 case a liquidation plan that will provide for a pro rata distribution creditors, which plan shall be consistent with the liquidation provisions contained in the Crestview Liquidation Plan and shall not treat any portion of the Allowed Memphis Claim worse than other unsecured claims.

(3) Vanguard agrees that the Allowed Memphis Claim does not fall within the category of claims described in 11 U.S.C. § 726(a)(4), and is not subject to subordination under 11 U.S.C. § 510. In addition, Vanguard will not argue in any case or proceeding that the Allowed Memphis Claim falls within the category of claims described in 11 U.S.C. § 726(a)(4), or that the Allowed Memphis Claim is subject to subordination under 11 U.S.C. § 510.

(4) To the extent that any provision of any plan of liquidation or order confirming or modifying such plan conflicts with any portion of this Agreement, the provisions of this Agreement shall control.

d. The Vanguard Settlement Amount collectively consists of the Reorganizing Vanguard Entities Settlement Amount and amounts recoverable on the Allowed Crestview Claim and the Allowed Memphis Claim.

e. Within fourteen days after the execution of this Agreement by all Parties, Vanguard shall file a motion with the District Court seeking an order (a) approving this Settlement Agreement with respect to the Reorganizing Vanguard Entities and (b) approving the Crestview Allowed Claim and the Memphis Allowed Claim pursuant to Fed. R. Bankr. P. 9019, which order shall be subject to and conditioned upon

approval by the Bankruptcy Court of the payment terms of the Reorganized Vanguard Entities Settlement Amount. Within fourteen days after the District Court enters such order, Vanguard shall file with the Bankruptcy Court a motion seeking modification of the terms of the Vanguard Reorganization Plan to the extent necessary to make it consistent with this Agreement.

2.     Orand shall pay to the United States the sum of two hundred twelve thousand, five hundred dollars ($212,500.00) ("Orand Settlement Amount"), plus interest at a 2.75% rate per annum accruing from March 28, 2018 until the Orand Settlement Amount and any interest accrued thereon is fully repaid, which constitutes restitution to the United States, as follows:

    a.  Orand shall make an initial payment of eighty-five thousand dollars ($85,000.00) ("Orand Initial Payment"), plus interest at a 2.75% rate per annum accruing from March 28, 2018, no later than three business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Tennessee.

    b.  Orand shall pay all portions of the Orand Settlement Amount remaining after the Orand Initial Payment by the 365th calendar day after the Effective Date of this Agreement.

3.     Miller shall pay to the United States the sum of thirty-seven thousand, five hundred dollars ($37,500) ("Miller Settlement Amount"), plus interest at a 2.75% rate per annum accruing from March 28, 2018 until the Miller Settlement Amount and any interest accrued thereon is fully repaid, which constitutes restitution to the United States, as follows:

    a.  Miller shall make an initial payment of fifteen thousand dollars ($15,000.00) ("Miller Initial Payment"), plus interest at a 2.75% rate per annum accruing from March 28, 2018, no later than three business days after the Effective Date of this Agreement by

electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Tennessee.

b.   Miller shall pay all portions of the Miller Settlement Amount remaining after the Miller Initial Payment by the 365th calendar day after the Effective Date of this Agreement.

4.      After the United States has received all portions of the Reorganizing Vanguard Entities Settlement Amount, the Orand Settlement Amount, and the Miller Settlement Amount, and the distributions to the Allowed Crestview Claim and the Allowed Memphis Claim are complete, the United States agrees that it shall disburse to Tennessee by electronic funds transfer thirty-five percent (35%) of each such payment received under the Agreement as soon as feasible by the end of each applicable calendar year (i.e., December 31, 2019).

5.      Subject to the exceptions in Paragraph 13 below (concerning excluded claims) and subject to Paragraph 25 and 26, below, and conditioned upon the United States' receipt of full payment of the Reorganizing Vanguard Entities Settlement Amount and the distributions to the Allowed Crestview Claim and the Allowed Memphis Claim, the United States releases the Reorganizing Vanguard Entities and Imperial, together with their current and former parent corporations; direct and indirect subsidiaries (other than Crestview or Memphis); divisions; current and former parent corporations;  and corporate and individual successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud. Nothing in this Paragraph is intended to release Crestview or Memphis from any claim.

6.       Subject to the exceptions in Paragraph 13 below (concerning excluded claims) and subject to Paragraph 25 and 26, below, and conditioned upon the United States' receipt of Orand's full payment of the Orand Settlement Amount, the United States releases Orand from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

7.       Subject to the exceptions in Paragraph 13 below (concerning excluded claims) and subject to Paragraph 25 and 26, below, and conditioned upon the United States' receipt of Miller's full payment of the Miller Settlement Amount, the United States releases Miller from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

8.       Subject to the exceptions in Paragraph 13 (concerning excluded claims) below, and subject to Paragraph 25 and 26, below, and conditioned upon the United States' receipt of full payment of the Reorganizing Vanguard Entities Settlement Amount and the distributions to the Allowed Crestview Claim and the Allowed Memphis Claim, Tennessee agrees to release the Reorganizing Vanguard Entities and Imperial, together with their current and former parent corporations; direct and indirect subsidiaries (other than Crestview and Memphis); divisions; current or former corporate owners; and corporate and individual successors and assigns of any of them, from any civil or administrative monetary claim that Tennessee has against the Reorganizing Vanguard Entities for the Covered Conduct under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to -185 or the common law theories of payment by

mistake or unjust enrichment. In addition, Tennessee does not have the authority, and does not intend, to release the Reorganizing Vanguard Entities from any claims or actions which may be asserted by private payers or insurers, including those that are paid by TennCare on a capitated basis. The Parties agree that the foregoing sentence is not intended to alter in any way the terms of Sections A.2.20.1.7-A.2.20.1.7.3 of the Contractor Risk Agreement with any TennCare Managed Care Organization. Nothing in this Paragraph is intended to release Crestview or Memphis from any claim.

9.    Subject to the exceptions in Paragraph 13 (concerning excluded claims) below, and subject to Paragraph 25 and 26, below, and conditioned upon the United States' receipt of Orand's full payment of the Orand Settlement Amount, Tennessee agrees to release Orand from any civil or administrative monetary claim that Tennessee has against Orand for the Covered Conduct under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to -185 or the common law theories of payment by mistake or unjust enrichment. Tennessee does not have the authority, and does not intend, to release Orand from any claims or actions which may be asserted by private payers or insurers, including those that are paid by TennCare on a capitated basis. The Parties agree that the foregoing sentence is not intended to alter in any way the terms of Sections A.2.20.1.7-A.2.20.1.7.3 of the Contractor Risk Agreement with any TennCare Managed Care Organization.

10.    Subject to the exceptions in Paragraph 13 (concerning excluded claims) below, and subject to Paragraph 25 and 26, below, and conditioned upon the United States' receipt of Miller's full payment of the Miller Settlement Amount, Tennessee agrees to release Miller from any civil or administrative monetary claim that Tennessee has against Miller for the Covered Conduct under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to -185 or the common law theories of payment by mistake or unjust enrichment. Tennessee does not

have the authority, and does not intend, to release Miller from any claims or actions which may be asserted by private payers or insurers, including those that are paid by TennCare on a capitated basis. The Parties agree that the foregoing sentence is not intended to alter in any way the terms of Sections A.2.20.1.7-A.2.20.1.7.3 of the Contractor Risk Agreement with any TennCare Managed Care Organization.

11. In consideration of the obligations of Vanguard in this Agreement and the Corporate Integrity Agreement (CIA), entered into among OIG-HHS, Vanguard, and Orand, and conditioned upon Vanguard's full payment of the Vanguard Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Vanguard (other than Crestview and Memphis) under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 13 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Vanguard from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 12, below.

12. In consideration of the obligations of Orand in this Agreement and the Corporate Integrity Agreement (CIA), entered into among OIG-HHS, Vanguard, and Orand, and conditioned upon Orand's full payment of the Orand Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42

U.S.C. § 1320a-7b(f)) against Orand under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 13 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Orand from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 13, below.

13.     Notwithstanding the releases given in Paragraphs 5, 6, 7, 8, 9 and 10 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.     Any criminal liability;

c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory and permissive exclusion from Federal health care programs;

d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.     Any liability based upon obligations created by this Agreement;

f.     Any liability of individuals other than Orand, as expressly set forth herein;

g.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.        Any liability for failure to deliver goods or services due;

i.         Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

j.        Any liability for the Allowed Memphis Claim and the Allowed Crestview Claim.

14.      Notwithstanding the releases given in Paragraphs 8, 9, and 10 of this Agreement or any other term of this Agreement, the following claims of Tennessee are specifically reserved and are not released:

a.        Any criminal liability;

b.        Any liability to the State of Tennessee for any conduct other than the Covered Conduct;

c.        Any liability based upon obligations created by this Agreement;

d.        Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services, provided by Vanguard, Orand or Miller;

e.        Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from the TennCare Program;

f.         Any criminal, civil, or administrative liability arising under the State of Tennessee's revenue codes;

g.        Any liability to the State of Tennessee, individual consumers or state program payers for claims involving unfair and/or deceptive acts or practices and/or violations of consumer protection laws; and

h.        Any liability for the Allowed Memphis Claim and the Allowed Crestview Claim.

15.     Vanguard has provided sworn financial disclosure statements (Financial Statements) to the United States, and the Governments have relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Vanguard warrants that, to the best of its knowledge, the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Vanguard had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Vanguard on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $400,000 or more, the Governments may at their option: (a) rescind this Agreement and reinstate their suit based on the Covered Conduct, or (b) not rescind the Agreement and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Vanguard previously undisclosed. Vanguard agrees not to contest any collection action undertaken by the Governments pursuant to this provision, and immediately to pay the Governments all reasonable costs incurred in such an action, including attorney's fees and expenses.

16.     In the event that the United States, pursuant to Paragraph 15 (concerning disclosure of assets), above, opts to rescind this Agreement, Vanguard agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or Tennessee within 120 calendar days of written notification to Vanguard that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on September 6, 2016.

17.     Vanguard, Orand, and Miller waive and shall not assert any defenses that they may have to any criminal prosecution or administrative action relating to the Covered Conduct

that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution or the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

18.     Except upon a rescission as provided in Paragraph 15, Vanguard, Orand, and Miller fully and finally release the Governments, their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Vanguard, Orand, and Miller have asserted, could have asserted, or may assert in the future against the Governments, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the Governments' investigation and prosecution thereof.

19.     The Reorganizing Vanguard Entities Settlement Amount, Allowed Memphis Claim, and Allowed Crestview Claim shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier, TennCare contractor or MCO or any state payer), related to the Covered Conduct; and Vanguard, Orand, and Miller agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

20.     Vanguard, Orand, and Miller agree to the following sections a(1) through a(5) below, and Vanguard and Orand additionally agree to the following section a(6):

    a.      Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of Orand, Miller, and Vanguard, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)    Vanguard, Orand, and Miller's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payments Vanguard, Orand, and Miller make to the United States pursuant to this Agreement; and

(6)    the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent monitor to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, and TennCare Program (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 15.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Vanguard.

        b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by Vanguard, Orand,

and Miller, and Vanguard, Orand, and Miller shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Vanguard, Orand, and Miller or any of their subsidiaries or affiliates to the Medicare, Medicaid, or TennCare Programs.

        c.      <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Vanguard, Orand, and Miller further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TennCare fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Vanguard, Orand, and Miller or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Vanguard, Orand, and Miller agree that the Governments, at a minimum, shall be entitled to recoup from Vanguard, Orand, and Miller any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

        Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Vanguard, Orand, and Miller or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable

Costs (as defined in this Paragraph) on Vanguard, Orand, and Miller or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States and/or Tennessee to audit, examine, or re-examine Vanguard's, Orand's, and Miller's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

       21.     Vanguard, Orand, and Miller agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Vanguard, Orand, and Miller shall encourage, and agree not to impair, the cooperation of its directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Vanguard, Orand, and Miller further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

       22.     Vanguard, Orand, and Miller agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

       23.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

       24.     Vanguard, Orand and Miller warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivilent

exchange of value that is not intended to hinder, delay, or defraud any entity to which Vanguard, Orand, or Miller was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

25.     Vanguard, Orand, or Miller shall not argue or otherwise take the position in any case, proceeding, or action that (1) Vanguard's, Orand's, or Miller's obligations under this Agreement may be avoided pursuant to 11 U.S.C. § 547; (2) Vanguard, Orand, or Miller was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the Governments; or (3) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Vanguard, Orand, or Miller.

26.     If any Party defaults on its obligations under this Agreement and such default is not cured after ninety (90) days following receipt of written notice of such default (a Default Event), or if any Party's obligations under this Agreement are avoided for any reason resulting in the return of any payment made to the United States or Tennessee made by any Party under this Agreement or a final order of avoidance of any obligation made by a Party to the United States or Tennessee, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code (an Avoidance Event), the United States and Tennessee, at their sole option, and in the absence of any agreement with the United States or Tennessee of a modified payment, may rescind such Party's releases in this Agreement, accelerate any unpaid amount that such Party owes under this Agreement, and bring any civil and/or administrative claim, action, or proceeding against such Party for the claims that would otherwise be covered by the releases provided in Paragraphs 5, 6, 7, 8, 9, and 10 above. Vanguard, Orand, and Miller agree that (i) any such claims, actions, or proceedings brought by the United States or Tennessee are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a), and shall not argue or otherwise

contend that the United States' or Tennessee's claims, actions, or proceedings are subject to an automatic stay; (ii) Vanguard, Orand, and Miller shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States or Tennessee within 90 calendar days of written notification to Vanguard, Orand, or Miller that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on September 6, 2016; and (iii) the Governments may pursue the full amount of their claims, except that Vanguard, Orand, and Miller shall be entitled to an offset for any amounts paid to the Governments under this Agreement that are not avoided.

        a.     Orand and Miller acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

        b.     Notwithstanding the foregoing, in the event of a Default Event as defined in this Paragraph, the OIG-HHS may exclude Vanguard from participating in all Federal health care programs until the entire Reorganizing Vanguard Entities Settlement Amount is paid. OIG-HHS will provide written notice of any such exclusion to Vanguard. Vanguard waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Vanguard wishes to apply for reinstatement, Vanguard must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Vanguard will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

        27.     Subject to the entry of a final non-appealable order from the District Court and the Bankruptcy Court authorizing and ratifying this Agreement in form and substance agreeable to the Governments, in their sole discretion, and conditioned upon the non-occurrence of (1) an

Avoidance Event or Default Event, or (2) initiation of a cause of action to avoid or recover any portion of the Settlement Amount or any payment thereunder, and within fourteen days of receipt of the initial Settlement Payments described in Paragraphs 1, 2, and 3, above, the Parties (as appropriate) shall promptly sign and file in the Civil Action a Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) as follows:

a. Dismissal as to the Governments' Amended Complaint and the Covered Conduct defined in this Agreement subject to the terms of this Agreement;

b. The Parties agree that the United States District Court for the Middle District of Tennessee and the Bankruptcy Court for the Middle District of Tennessee shall retain concurrent jurisdiction to enforce this Agreement. Defendants agree that any action or proceeding to enforce this Agreement is not subject to the automatic stay of 11 U.S.C. § 362(a) and that the Governments would retain the right to refile their claims in the event of a Default or Avoidance Event.

28. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

29. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

30. This Agreement is governed by the laws of the United States. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

31. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

32.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

33.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

34.     This Agreement is binding on Vanguard's, Orand's, and Miller's successors, transferees, heirs, and assigns.

35.     All parties consent to the Governments' disclosure of this Agreement, and information about this Agreement, to the public.

36.     The Effective Date of this Agreement ("Effective Date of Agreement") shall be the date on which the Bankruptcy Court's order modifying the terms of the Vanguard Reorganization Plan to the extent necessary to make them consistent with this Agreement becomes final and non-appealable.

37.     Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 1/9/19        BY: _~Elly Bn May~_

ELLEN BOWDEN MCINTYRE
Assistant United States Attorney
Middle District of Tennessee

SUSAN LYNCH
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice


DATED: 12/13/2018        BY: _~Lisa M Re~_

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

*Vanguard Settlement Agreement*

25

## THE STATE OF TENNESSEE

DATED: _11/2/2018_          BY: _Herbert H. Slatery III_

HERBERT H. SLATERY III
Attorney General and Reporter

**VANGUARD HEALTHCARE, LLC; VANGUARD HEALTHCARE SERVICES, LLC; VANGUARD FINANCIAL SERVICES, LLC; ELDERSCRIPT SERVICES, LLC; BOULEVARD TERRACE, LLC; VANGUARD OF CRESTVIEW, LLC; GLEN OAKS, LLC; IMPERIAL GARDENS HEALTH AND REHABILITATION, LLC; VANGUARD OF MEMPHIS, LLC; VANGUARD OF MANCHESTER, LLC – DEFENDANTS**

DATED: _____     BY: _____
                              WILLIAM ORAND

DATED: 1/7/19     BY: _____
                              CHRISTY TOSH CRIDER
                              TY E. HOWARD
                              Counsel for the Vanguard Entities


**WILLIAM ORAND - DEFENDANT**

DATED: _____     BY: _____
                              WILLIAM ORAND

DATED: _____     BY: _____
                              CHRISTY TOSH CRIDER
                              Counsel for William Orand


**MARK MILLER - DEFENDANT**

DATED: _____     BY: _____
                              MARK MILLER

DATED: _____     BY: _____
                              HAL HARDIN
                              Counsel for Mark Miller

*Vanguard Settlement Agreement*                    27

VANGUARD HEALTHCARE, LLC; VANGUARD HEALTHCARE SERVICES, LLC;
VANGUARD FINANCIAL SERVICES, LLC; ELDERSCRIPT SERVICES, LLC;
BOULEVARD TERRACE, LLC; VANGUARD OF CRESTVIEW, LLC; GLEN OAKS,
LLC; IMPERIAL GARDENS HEALTH AND REHABILITATION, LLC; VANGUARD
OF MEMPHIS, LLC; VANGUARD OF MANCHESTER, LLC -- DEFENDANTS

DATED: 1/8/19          BY:  _____
                            WILLIAM ORAND

DATED: _____       BY:  _____
                            CHRISTY TOSH CRIDER
                            TY E. HOWARD
                            Counsel for the Vanguard Entities


WILLIAM ORAND - DEFENDANT

DATED: 1/8/19          BY:  _____
                            WILLIAM ORAND

DATED: 1/9/19          BY:  _____
                            CHRISTY TOSH CRIDER
                            Counsel for William Orand


MARK MILLER - DEFENDANT

DATED: _____       BY:  _____
                            MARK MILLER

DATED: _____       BY:  _____
                            HAL HARDIN
                            Counsel for Mark Miller

*Vanguard Settlement Agreement*                                    27

**VANGUARD HEALTHCARE, LLC; VANGUARD HEALTHCARE SERVICES, LLC; VANGUARD FINANCIAL SERVICES, LLC; ELDERSCRIPT SERVICES, LLC; BOULEVARD TERRACE, LLC; VANGUARD OF CRESTVIEW, LLC; GLEN OAKS, LLC; IMPERIAL GARDENS HEALTH AND REBHABILITATION, LLC; VANGUARD OF MEMPHIS, LLC; VANGUARD OF MANCHESTER, LLC – DEFENDANTS**

DATED: _____  BY: _____
WILLIAM ORAND

DATED: _____  BY: _____
CHRISTY TOSH CRIDER
TY E. HOWARD
Counsel for the Vanguard Entities

**WILLIAM ORAND - DEFENDANT**

DATED: _____  BY: _____
WILLIAM ORAND

DATED: _____  BY: _____
CHRISTY TOSH CRIDER
Counsel for William Orand

**MARK MILLER - DEFENDANT**

DATED: 12/5/18  BY: _____
MARK MILLER

DATED: 12 6 18  BY: _____
HAL HARDIN
Counsel for Mark Miller

*Vanguard Settlement Agreement*

27

**Exhibit A**
**Illustrative Payment Schedule**

| Semi-Annual Payment | Payment | 2.75% Interest | Principal | Balance |
|---|---|---|---|---|
| Settlement Amount | | | | $5,100,000.00 |
| | | | | |
| Initial Payment on Effective Date | $232,204.79 | $107,204.79 | $125,000.00 | $4,975,000.00 |
| 7/1/2019 | $423,763.39 | $68,406.25 | $355,357.14 | $4,619,642.86 |
| 1/1/2020 | $418,877.23 | $63,520.09 | $355,357.14 | $4,264,285.72 |
| 7/1/2020 | $413,991.07 | $58,633.93 | $355,357.14 | $3,908,928.58 |
| 1/1/2021 | $409,104.91 | $53,747.77 | $355,357.14 | $3,553,571.44 |
| 7/1/2021 | $404,218.75 | $48,861.61 | $355,357.14 | $3,198,214.30 |
| 1/1/2022 | $399,332.59 | $43,975.45 | $355,357.14 | $2,842,857.16 |
| 7/1/2022 | $394,446.43 | $39,089.29 | $355,357.14 | $2,487,500.02 |
| 1/31/2023 | $2,521,703.15 | $34,203.13 | $2,487,500.02 | $0.00 |
| Total | $5,617,642.31 | $517,642.31 | $5,100,000.00 | |

**Assumptions**

1. Final court approval is 1/1/19 ("Effective Date")
2. Initial Payment: Interest accrued from March 28, 2018 - January 1, 2019 (279 days)
3. Semi-annual principal payment based on 7 year amortization schedule with a
   balloon payment at the end of year 5.
4. Semi-Annual Payment #1 begins 6 months after Initial Payment, Semi-Annual Payment #2 begins 12 months
   after Initial Payment, etc.